**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KYLE P.,

                Plaintiff,

   v.                                    3:21-CV-223

                                                 (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON<br>Attorney for Plaintiff<br>1500 E. Main Street<br>P.O. Box 89<br>Endicott, New York 13761 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>Attorney for Defendant<br>J.F.K. Federal Building - Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | AMY C. BLAND, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 5 & General Order 18.

purposes of disability insurance benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 16. Plaintiff also filed a reply brief, and Defendant filed a surreply. Dkt. Nos. 19 & 22. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion for Judgment on the Pleadings is denied. The Commissioner's decision denying Plaintiff disability benefits is reversed, and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1970, making him 50 years old on the date of the October 28, 2020 decision at issue in this case. Dkt. No. 8, Admin. Tr. ("Tr.") at p. 40-41, 217. Plaintiff attended regular education classes before leaving school without graduating, but subsequently obtained his GED. Tr. at pp. 41, 66, 392. He has a history of arrests and imprisonment, most recently serving four months in prison between August and December 2012. Tr. at pp. 45, 393. His prior employment includes work as a temporary laborer, maintenance worker, stock clerk, and telemarketer, but he had not stayed at any position longer than a few months. Tr. at pp. 69, 236-249. Plaintiff alleges disability based upon a number of physical and mental impairments including arthritis, anxiety, insomnia, and posttraumatic stress disorder. Tr. at pp. 392-393, 397, 523, 528-529, 621-622. His arguments here only address alleged error related to his mental impairments. Dkt. No. 11 at p. 1 n. 2.

## B.  Procedural History

This case has a lengthy procedural history.  Plaintiff applied for disability insurance benefits on September 10, 2013.  Tr. at pp. 217-222.  He alleged a disability onset date of September 1, 2011.  Tr. at p. 217.  Plaintiff's application was initially denied on December 19, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 111-130 & 133-135.  Plaintiff appeared at a hearing before ALJ Laura Michalec Olszewski on July 14, 2015, at which he and a vocational expert ("VE") testified.  Tr. at pp. 61-91.  On October 9, 2015, ALJ Olszewski issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 8-27.  On March 7, 2017, the Appeals Council denied Plaintiff's request for review.  Tr. at pp. 1-6.

Plaintiff commenced a proceeding in the Northern District of New York.  By a decision dated June 14, 2018, Magistrate Judge Christian F. Hummel remanded the case to the Commissioner for further administrative proceedings.  Tr. at pp. 571-602.  On October 9, 2018, the Appeals Council remanded Plaintiff's claim to ALJ Kenneth Theurer for further proceedings.  Tr. at pp. 605-607.

On August 16, 2019, ALJ Theurer held a hearing at which Plaintiff, medical expert Dr. Steven Gollub, and VE Dawn Blythe testified.  Tr. at pp. 491-512.  On September 27, 2019, ALJ Theurer found Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 471-490.  In response, Plaintiff commenced another action in the Northern District of New York, before this Court.  Following a stipulation between

the parties, the case was remanded for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405 (g). Tr. at pp. 998-1002.

On June 22, 2020, the Appeals Council remanded Plaintiff's claim back to ALJ Theurer. Tr. at pp. 1003-1008. In its remand order, the Appeals Council found that ALJ Theurer erred when he "summarized the medical evidence without explaining why the numerous abnormalities[2] on examination were discounted." Tr. at p. 1006. The Appeals Council further found that this error affected the evaluation of multiple medical opinions, including the opinion of Dr. L. Blackwell, a non-examining state consultant whose psychiatric opinion the ALJ assigned "great weight" even though "many of the findings that Dr. Blackwell cited were significantly abnormal, including findings that the claimant was hostile, easily confused and distracted, had poor overall social skills, was lethargic, and had poor insight and judgment." Tr. at pp. 989, 1006.

On October 16, 2020, ALJ Theurer held a telephonic hearing with Plaintiff's consent at which Plaintiff, medical expert Dr. Allan Levine, and VE Theresa Hopkins testified. Tr. at pp. 936-976, 1048-1049. On October 28, 2020, ALJ Theurer found Plaintiff was not disabled under the Social Security Act. Tr. at pp. 901-928. In response, Plaintiff commenced this action in the Northern District of New York. Dkt. No. 1.

---

[2] For clarity and consistency, this court will utilize the term "abnormality" when necessary to discuss the ALJ's compliance with the remand order. Typically, the term is used when assessing the severity of an impairment. *See, e.g., Titles II & XVI: Medical Impairments That Are Not Severe,* SSR 85-28, 1985 WL 56856, at *2 (". . . an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.").

### C. ALJ Theurer's October 28, 2020 Decision

In his October 28, 2020 decision, ALJ Theurer made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his SSI application date of September 10, 2013. Tr. at p. 907. Second, the ALJ found that Plaintiff has the following severe impairments: "very mild degenerative joint disease of the left acromioclavicular joint, pes planus, posttraumatic stress disorder, depression, mood disorder, and personality disorder." Tr. at pp. 907-910. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 910-911. Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work, stating:

> he can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, no overhead lifting with left upper extremity, sit for up to six hours, and stand for approximately six hours in eight hour day with normal breaks; walk for no more than 3 hours in an 8 hour day no more than 30 minutes at a time, after which he would require to sit for 30 minutes; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; can perform occasional balancing, stooping, kneeling, crouching; and no crawling. Should avoid work at unprotected heights or in conjunction with dangerous machinery. No more than occasional overhead reaching with the left upper extremity, no restrictions reaching in other directions or with right upper extremity. Should avoid exposure to heavy vibrations or extremes of cold.
>
> He retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; he can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks- i.e. he can

> ask for help when needed; handle conflicts with others; state his own point of view; initiate or sustain a conversation and understand and respond to physical, verbal and emotional social cues but he should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals. Should have no more than occasional contact with coworkers and supervisors and should have no more than incidental contact with the public. Can handle reasonable levels of simple work-related stress in that he can make simple decisions directly related to the completion of his tasks in a stable, unchanging work environment. I define incidental as more than never and less than occasional, simply the job should not involve direct interaction with the public but the claimant does not need to be isolated away from the public.

Tr. at p. 911-912. Fifth, the ALJ found that Plaintiff has no past relevant work. Tr. at p. 920. Sixth, the ALJ found that Plaintiff was in the "younger individual" category at the time of application and had since progressed to "closely approaching advanced age" while his claim has been pending. *Id.* He also found that Plaintiff has at least a high school education, and is able to communicate in English. *Id.* Seventh, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 920-921. The ALJ, therefore, concluded that Plaintiff was not disabled from September 10, 2013 through the date of his decision. Tr. at p. 921.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not

substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

**A. The ALJ Did Not Comply with the Appeals Council's Remand Order**

On October 31, 2013, Dr. Cheryl Loomis performed a psychiatric consultative examination of Plaintiff. Tr. at pp. 392-396. Dr. Loomis observed that Plaintiff was defensive and hostile, and hesitant when he did cooperate. Tr. at p. 393. She opined that Plaintiff had poor overall social skills, fluent and clear speech, and a coherent and goal-directed thought process. Tr. at p. 393-394. As the examination continued, Plaintiff became irritable, and "started making fists and telling [Dr. Loomis] that 'you should not waste my time.'" *Id.* at p. 394. He refused to complete the requested memory exercises and complained "you are giving me a headache." *Id.* At one point, Plaintiff "had his head on the table and appeared completely disinterested and indifferent in terms of answering the questions." Tr. at 393-394.

In Dr. Loomis' opinion, Plaintiff "exhibited no impairment in his ability to follow and understand simple directions and instructions, and learn new tasks." Tr. at p. 395. She further opined Plaintiff "exhibited marked impairment in his ability to perform simple tasks independently or under supervision, maintain attention and concentration, and maintain a regular schedule" and "exhibited marked impairment in his ability to perform complex tasks independently or under supervision, make appropriate decisions, related adequately with others, and appropriately deal with stress." *Id.* In light of

9

Plaintiff's presentation at the examination, Dr. Loomis offered a guarded prognosis and opined that Plaintiff would not be able to manage his own funds. Tr. at p. 396.

Dr. L. Blackwell reviewed Plaintiff's then-current medical records, including the report from Dr. Loomis' psychiatric consultative examination, and prepared an opinion dated December 16, 2013. Tr. at pp. 112-126. Dr. Blackwell opined that Plaintiff is "moderately limited" in his ability to understand, remember, and carry out detailed instructions, but has no significant limitations in his ability to understand, remember and carry out very short and simple instructions, or to remember locations and work-like procedures. Tr. at p. 121. The opinion found Plaintiff is "moderately limited" in several areas related to concentration and persistence: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Tr. at p. 122.

With regard to social interaction, Dr. Blackwell opined Plaintiff is "moderately limited" in his ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without causing distraction or exhibiting behavioral extremes. Tr. at p. 122. Dr. Blackwell also opined that Plaintiff is "moderately limited" in his

ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. Tr. at pp. 122-123.

In a section of the opinion entitled "Additional Explanation," Dr. Blackwell noted that Plaintiff returned to therapy in March 2013 as a condition of his parole. Tr. at pp. 123, 330. Citing these early treatment notes, Dr. Blackwell noted that Plaintiff presented at the time as appropriate, cooperative, and with a normal mood, but offered vague answers to questions about his impairments. Tr. at pp. 123, 377. Dr. Blackwell then summarized Dr. Loomis' findings, including Plaintiff's lack of cooperation, irritable mood, and indifferent approach to the consultative examination. Tr. at pp. 123, 393-395.

Dr. Blackwell also considered Plaintiff's own reports of daily activities, including his ability to make simple meals, clean, do laundry, and use public transportation. Tr. at pp. 123, 394-395. Dr. Blackwell then stated "Total information indicates [Plaintiff] can perform simple tasks in a low contact setting." Tr. at p. 123.

In his September 27, 2019 decision, ALJ Theurer assigned "partial weight" to Dr. Loomis' opinion, finding it "not consistent with the record as a whole and not supported by relevant evidence." Tr. at 483. He assigned "great weight" to Dr. Blackwell's opinion, finding it "consistent with the record as a whole and supported with relevant evidence." *Id.*

As discussed above, the Appeals Council reviewed this September 2019 decision, and remanded Plaintiff's claim back to ALJ Theurer to "[g]ive further consideration to

11

the treating and non-treating source opinions… and explain the weight given to such opinion evidence." Tr. at p. 1007.  The Appeals Council found ALJ Theurer's brief statements that the psychiatric opinions were or were not "consistent with the record as a whole" to be insufficient, because they failed to explain "why the numerous abnormalities on examination were discounted."  Tr. at p. 1006.  In particular, the Appeals Council expressed concern that ALJ Theurer's cursory explanation regarding his reliance on Dr. Blackwell's opinion ignored that "many of the findings that Dr. Blackwell cited were significantly abnormal, including findings that the claimant was hostile, easily confused and distracted, had poor overall social skills, was lethargic, and had poor insight and judgment." Tr. at pp. 123, 1006.  The Appeals Council found that the decision's failure to reconcile these abnormal findings with the RFC determination was error to be resolved on remand.  Tr. at 1005-1006.

  An ALJ's failure to follow an order of the Appeals Council is reversible error. *See* 20 C.F.R. § 404.977(b) ("The [ALJ] *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.") (emphasis supplied); *Amanda H. v. Saul*, 2019 WL 3891038, at *5 (N.D.N.Y. Aug. 16, 2019) ("reviewing courts have found that failure to comply with the Appeals Council's remand order may be ground for remand") (collecting cases); *Parks v. Colvin*, 2017 WL 279558, at *3 (W.D.N.Y. Jan. 21, 2017) ("The ALJ's failure to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand.").

The Commissioner's memorandum of law correctly points out that ALJ Theurer's October 28, 2020 decision recognized the Appeals Council's instruction to "give further consideration to the treating and non-treating source opinions . . . .and explain the weight given to such opinion evidence," and provided an expanded explanation for the weight assigned those opinions. Tr. at pp. 905, 913-919. With regard to Dr. Loomis' opinion, ALJ Theurer assigned it "partial weight," stating in relevant part:

> …the record as a whole does not support the conclusion that the claimant's impairments rise to the level of "marked." Specifically, while Dr. Loomis' evaluation shows significant abnormal findings during the mental status evaluation, these clinical findings are not replicated elsewhere. While Dr. Loomis indicated that the claimant's insight and judgment were poor, prison records and counseling records indicated that his judgment was intact and insight was intact. In addition, counseling records indicated that the claimant's attitude was cooperative. In addition, the claimant's psychological symptoms improved with treatment. While I have accounted for Dr. Loomis' opinion to the extent that I have restricted the claimant to simple work-related stress, I do not adopt her conclusion that the claimant has "marked" restrictions in functioning.

Tr. at p. 915 (internal citations omitted).

With regard to Dr. Blackwell's opinion, the ALJ found it supported his RFC determination that Plaintiff is "capable of simple work in a low contact setting" and assigned it "significant weight." *Id*. The ALJ found Dr. Blackwell's opinion to be "supported by the relatively benign mental status evaluations" and "the fact that his psychological symptoms improved with treatment." *Id*. The ALJ cited the absence of

"any extended periods of psychiatric hospitalizations during the period under review." *Id.*

In his October 28, 2020 decision, ALJ Theurer characterized the "abnormal" findings in Dr. Loomis' consultative examination report as an outlier when compared to the overall mental health record, and found evidence of improvement in Plaintiff's functional limitations with treatment. Tr. at p. 915. However, the Appeals Council identified other "abnormalities" in Plaintiff's mental health records that it wanted the ALJ to address, beyond just the consultative examination. Tr. at pp. 1005-1006. For example, the Appeals Council cited the statements from social worker Paul Komatinsky that Plaintiff

> has difficulty being around people and he trusts very few people. He has difficulty staying focused often due to paranoid thinking that someone may be behind him or may be talking about him. [Plaintiff] has poor conflict resolution skills – criticism embarrasses him and he feels 'backed into a corner' and he will then fight. [Plaintiff] will sometimes have flashbacks related to past traumas."

Tr. at pp. 453, 1006. As opposed to improvement, Mr. Komatinsky commented on Plaintiff's poor attendance at counseling sessions in June 2015 and recommended that he increase the frequency of his appointments until his symptoms were better controlled. Tr. at p. 763.

Other treatment notes referenced by Plaintiff show that his desire to isolate himself and avoid leaving his apartment have prevented him from accessing some mental health treatment, and he had "extremely poor attendance" at counseling sessions

as recently as April 2019.  Tr. at pp. 333, 853.  In June 2020, Plaintiff's mental health provider noted that Plaintiff "has not made muc[h] progress" in managing his mood swings and anger, and "remains in the pre-contemplation stage of change."  Tr. at pp. 1174-1175.  The record also documents multiple altercations with supervisors during Plaintiff's limited attempts to work, and evidence of hostility to treatment providers similar to his behavior during the consultative examination.  Tr. at p. 448, 828.  None of these "abnormalities" are discussed in the ALJ's decision, despite the clear instructions from the Appeals Council to consider them and explain the ALJ's reasoning for inclusion or exclusion of associated limitations in the RFC determination.  Tr. at pp. 1005-1007.  The court also notes that some of the treatment notes relied upon by the ALJ to document improvement in Plaintiff's symptoms predate the time period relevant to Plaintiff's disability claim, or are based upon initial evaluations when Plaintiff sought treatment from a new mental health provider.  Tr. at pp. 310, 317-318, 322, 328, 332, 915.

      The ALJ's emphasis on "benign treatment notes" and his corresponding failure to address "abnormalities" in the record clearly runs afoul of the Appeals Council's remand order.  Accordingly, this Court finds remand is required for the Commissioner to conduct further administrative proceedings to reconsider the treating and non-treating source opinions consistent with the Appeals Council's June 22, 2020 order.

### B. Plaintiff's Other Arguments

Because the court is remanding for proper consideration of the medical opinion evidence in accordance with the prior order of the Appeals Council, it will not consider Plaintiff's additional arguments regarding the ALJ's RFC analysis and Step Five determination, because those decisions will necessarily be revisited upon remand. *See, e.g., Parks v. Colvin,* 2017 WL 279558, at *3 n.3 ("[plaintiff] advances other arguments that []he believes require reversal of the Commissioner's decision.  However, because this Court disposes of this matter based on the ALJ's failure to follow the Appeals Council's remand order . . . those arguments need not be reached") (internal citation omitted).

This Court also denies Plaintiff's request for an order remanding solely for the calculation of benefits.  Plaintiff contends that further development of the record is unnecessary, and additional administrative proceedings will only result in further delaying final resolution of a disability claim that was first filed in September 2013 and has already been subject to multiple remand orders. Dkt. No. 11 at pp. 25-26.  While the frustration caused by the lengthy history of this case is understandable, "[r]eversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability, and a remand for further evidentiary proceedings would serve no useful purpose." *Harry L. v. Comm'r of Soc. Sec.*, 2019 WL 3937224, at *5 (N.D.N.Y. Aug. 5, 2019), *report and recommendation adopted sub nom. Harry L. v. Saul*, 2019 WL 3934952 (N.D.N.Y. Aug. 20, 2019).  As such, reversal with a directed finding of

disability is the "rare case." *Martin v. Comm'r of Soc. Sec.*, 2020 WL 8224884, at *4 (S.D.N.Y. Dec. 21, 2020), *report and recommendation adopted*, 2021 WL 197429 (S.D.N.Y. Jan. 20, 2021); *see also Carlsen v. Berryhill*, 2017 WL 4155333, at *15 (E.D.N.Y. Sept. 19, 2017). The record does not demonstrate that this is such a rare case.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings pursuant to sentence four of section 405(g) as set forth above; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: May 25, 2022
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge